UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 03-04 T

VLADIMIR MENDOZA :

DEFENDANT'S SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582( c )(2) AND U.S.S.G. §§ 1B1.10, 2D1.1

In his supplemental memorandum of law in support of motion for sentence reduction, the defendant cited a recent decision from the United States District Court for the District of Maine, United States v. Horta, No. CR-07-16-B-W (U.S.D. Me. February 19, 2008), for the proposition that the court has the authority to sentence Mr. Mendoza, and similarly-situated defendants, to a reduced term of imprisonment where the guideline range is based on crack cocaine and other controlled substances.

Since the filing of the supplemental memorandum of law, defense counsel has become aware of three other cases in which district courts have granted relief to so-called "multi-drug" defendants.

United States v. Watkins, 2008 WL 152901 (E.D. Tenn., Jan. 14, 2008); United States v. Molina, 06-CR-482(JG) (February 28, 2008); and United States v.

Tyran Commer, 0755-2:99 CR00119-002 (March 3, 2008). ( Copies of each case are attached hereto.)

VLADIMIR MENDOZA,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
(401) 528 - 4281
Edward_Roy@fd.org

CERTIFICATION

I hereby certify that I caused a copy of the within to be served upon Adi Goldstein, AUSA and on Dennis Jenkins, SUSPO on the 12th day of March, 2008.

/s/ Edward C. Roy, Esquire

4 of 100 DOCUMENTS

**UNITED STATES OF AMERICA, Plaintiff, v. FERDALE WATKINS, Defendant.**

**Case No. 1:07-CR-67**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE**

**2008 U.S. Dist. LEXIS 2666**

**January 14, 2008, Filed**

**COUNSEL:** [*1] For Ferdale Watkins, Defendant (1): Rita C LaLumia, LEAD ATTORNEY, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN.

For USA, Plaintiff: Steven S Neff, LEAD ATTORNEY, U S Department of Justice, Office of U S Attorney, Chattanooga, TN.

**JUDGES:** CURTIS L. COLLIER, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CURTIS L. COLLIER

**OPINION**

**MEMORANDUM**

At defendant Ferdale Watkins' ("Defendant") sentencing hearing held on December 20, 2007, the Court heard his Motion for Variance (Court File No. 96). This motion was amended at the sentencing hearing to alternatively request a downward departure within the United States Sentencing Guidelines, as promulgated by the United States Sentencing Commission (Nov. 2007) ("USSG" or "Guidelines"). *See* USSG § 5K2.0(a)(2)(B). At the hearing, the Court granted Defendant's motion for a downward departure, because application of the Guidelines as written produced an irrational result. This memorandum elaborates on that decision, explaining in more detail the nature of the departure within the Guidelines in conformity with the underlying principles and purposes of the Guidelines.

**I. ISSUE**

The abnormality presented in this case is that Defendant's offense level under the [*2] Guidelines is increased solely by converting the quantity of the crack cocaine involved into its marijuana equivalent. In simple terms, this means the Guidelines produce a different and higher offense level if crack cocaine is converted into its marijuana equivalent than if the same quantity of crack cocaine is simply calculated as crack cocaine. Because Defendant was found in possession of both crack cocaine and powder cocaine, the Guidelines instruct the Court to convert both drugs into their marijuana equivalents. *See* USSG § 2D1.1 comment. (n. 10(D)). The powder cocaine was of such a small quantity that it had no effect upon the resulting offense level. Regardless, due to the crack cocaine conversion, Defendant is subject to a higher offense level. *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)).

**II. FACTS AND APPLICATION**

Defendant pleaded guilty to conspiracy to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. His base offense level is calculated with the following drug quantities: 96.36 grams of crack cocaine and 27.95 grams of powder cocaine. Because Defendant possessed more than one type of drug, the Guidelines require the [*3] Court to reach a base offense level, and corresponding sentencing range, which considers the aggregate amount of drugs. *See* USSG § 2D1.1 comment. (n. 10(D)). To do so, the Guidelines provide equivalency rates to convert the crack cocaine and powder cocaine to their equivalent amounts of marijuana for sentencing. *See* USSG § 2D1.1 comment. (n.10(D)(i)(II), (E)).

The calculations for the crack cocaine conversion are as follows: to convert crack cocaine to its marijuana equivalent, the Guidelines provide conversion rates which vary according to the base offense level of the crack cocaine. USSG § 2D1.1 comment. (n.10(D)(i)(II)). Here, Defendant's offenses involved 96.39 grams of crack cocaine, resulting in an offense level of 30 (which includes offenses involving at least 50 but less than 150 grams of crack cocaine). At offense level 30, the marijuana equivalency is 14 kilograms of marijuana per 1

gram of crack cocaine. *Id.* Therefore, Defendant's 96.39 grams of crack cocaine convert to 1349.46 kilograms of marijuana. Although 96.39 grams of crack cocaine fall within the middle of the range for a level 30 crack cocaine offense, the converted marijuana amount of 1349.46 kilograms results in [*4] an offense level of 32 (which includes offenses involving at least 1,000 but less than 3,000 kilograms of marijuana). This increase in offense level occurs prior to adding the marijuana-equivalent amount of the powder cocaine. [1]

> 1 Upon further inquiry, the Court found this increase occurs when crack cocaine amounts in the following ranges are converted to their marijuana equivalents:
>
> > 6.25 - 19.99 grams (a level 24 crack cocaine offense increases to a level 26 marijuana-equivalent offense);
> >
> > 71.43 - 149.99 grams (a level 30 crack cocaine offense increases to a level 32 marijuana-equivalent offense);
> >
> > 447.77 - 499.99 grams (a level 32 crack cocaine offense increases to a level 34 marijuana-equivalent offense); and,
> >
> > 4477.62 - 4499.99 grams (a level 36 crack cocaine offense increases to a level 38 marijuana-equivalent offense).
>
> These offense-level increases are caused by the varying crack cocaine conversion rates under USSG § 2D1.1 comment (n.10(D)(i)(II)).

The Guidelines provide a fixed conversion ratio for powder cocaine of 200 grams of marijuana for every gram of powder cocaine. USSG § 2D1.1 comment. (n.10(E)). As a result, Defendant's 27.95 grams of powder cocaine result in 5.59 kilograms of [*5] marijuana-equivalent. *See id.* This amount is less than half of one percent of the 1349.46 kilograms of the marijuana-equivalent converted from the crack cocaine, and does not affect Defendant's offense level.

## III. ANALYSIS

### A. Departure Within the Guidelines

The Guidelines provide sentencing ranges for particular offenses, circumstances, and characteristics of the defendant, but provide for departures in unusual cases where the Guidelines did not fully incorporate the circumstances of that case. USSG § 1A1.1, Pt.A, comment. (n. 4(b)), policy statement; *accord* USSG § 5K2.0, policy statement. The Sentencing Commission "does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure," and recognizes its case analysis in forming the Guidelines is neither perfect nor complete. *Id.* These policy statements coincide with the corresponding statutory language, which recognizes it is impossible for the Guidelines to account for all circumstances. *See* 18 U.S.C. § 3553(b)(1). District judges are specifically authorized and encouraged to depart from an otherwise applicable guideline when it encounters an "atypical case." [*6] USSG § 1A1.1, Pt.A, comment. (n. 4(b)). However, even when application of a specific guideline does not account for a unique circumstance, sentencing courts must still consider, no less vigorously, the fundamental principles and body of experience found within the Guidelines,. *See* 18 U.S.C. § 3553(b)(1); USSG § 5K2.0(a)(1)(A), policy statement.

Pursuant to 18 U.S.C. § 3553(b)(1), the Court is authorized to sentence a defendant independently of the Guidelines, as Defendant requests in moving for a variance. However, under current sentencing jurisprudence, the Court must properly calculate the applicable guideline range and must consider both the Guidelines and that properly calculated guideline range. *See Gall v. United States,* 128 S. Ct. 586, 596-98, 169 L. Ed. 2d 445 (2007); *United States v. McElheney,* -- F. Supp. 2d --, 2007 U.S. Dist. LEXIS 84179, 2007 WL 3377834, *3 (E.D. Tenn. Nov. 14, 2007); *United States v. Phelps,* 366 F. Supp. 2d 580, 584-85 (E.D. Tenn. 2005). Only after having correctly calculated the applicable guideline range does the sentencing judge consider all of the factors set out in 18 U.S.C. § 3553(a). If the district court determines that a sentence within the properly calculated guidelines is sufficient to fulfill [*7] the § 3553(a) factors, then the judge should impose such a sentence.

Here, the Court concludes that after determining the correct guideline range, including appropriate departures, the resulting range provides for a sentence that is sufficient, but no greater than necessary to comply with the purposes of § 3553(a). Accordingly, there is no need for the Court to impose a non-guideline sentence in this case, or in the words of Defendant, a variance. When the initial calculation of the sentencing range under the Guidelines produces an anomalous result, for purposes of "administration and to secure nationwide consistency," *Gall,* 128 S. Ct. at 596, the Court is best served by

making a departure to the appropriate range within the Guidelines, guided by the fundamental purpose and principles of the Guidelines. *See* USSG § 5K2.0, policy statement.

**B. Proportionality**

In considering whether a result is an anomaly, the Court looks to the structure and underlying theory or philosophy of the Guidelines. One of the underlying theories that runs throughout the Guidelines is that those more culpable should face greater sentences. For crimes where amounts or quantities are involved, the Guidelines generally [*8] instruct that these amounts and quantities should be taken into account and the larger amount or quantity should result in a greater sentence. This is the principle of proportionality. In formulating the Guidelines, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." USSG § 1A1.1 comment. (ed.n.3), background. Pursuant to 18 U.S.C. § 3553(a)(6), "the court, in determining the particular sentence to be imposed, shall consider. . .the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

This proportionality is evident throughout the Guidelines. The severity of single-drug offenses are clearly delineated by the amount of the illegal substance and the dangers that substance creates. *See* USSG § 2D1.1(c). This same practice is seen with respect to many other sections of the Guidelines where a greater amount or quantity results in a greater Guideline offense level. *E.g.* USSG §§ 2B1.1(b)(1), (2) (embezzlement); 2B3.1(b)(3), (7) (robbery); 2L1.1(b)(2), (7)(transporting and harboring illegal aliens).

In drug cases [*9] proportionality requires offenses involving greater amounts of the same drug to be punished more severely than lesser amounts of that drug. *See* USSG § 2D1.1(c). When the Guidelines are applied as written, Defendant is subject to a more serious offense level than defendants charged with greater amounts of crack cocaine. *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)). This occurs because the crack-cocaine-to-marijuana conversion rate for a level 30 offense (involving at least 50 grams and not more than 150 grams of crack cocaine) is 14 kilograms of marijuana per gram of crack cocaine (14:1), while the conversion rate for a level 32 offense (involving at least 150 grams and not more than 500 grams) is only 6.7 kilograms of marijuana per gram of crack cocaine (6.7:1) - less than half the rate of a level 30 offense. *See* USSG § 2D1.1(c)(4), (5); comment. (n.10(D)(i)(II)).

When applied in Defendant's case, his 96.39 grams of crack cocaine (level 30) are converted to 1349.46 kilograms of marijuana-equivalent (14:1), while a defendant with 150 grams of crack cocaine (53.61 grams more than Defendant) would only be attributed with 1005 kilograms of marijuana-equivalent (6.7:1). *See* USSG § 2D1.1 comment. [*10] (n.10(D)(i)(II)). Thus, a defendant possessing over 50 additional grams of crack cocaine would be attributed with 305 fewer kilograms of marijuana-equivalent. *See id.*

As a further comparison, a defendant with 201 grams of crack cocaine (a level 32 offense, converting at 6.7:1), over twice that of Defendant, would be attributed with approximately the same amount of marijuana-equivalent (1346.70 kilograms) as Defendant, who possessed 96.39 grams of crack cocaine (1349.46 kilograms of marijuana-equivalent). *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)). Thus, a strict application of the Guidelines as written would punish Defendant more severely than defendants with substantially more crack cocaine. This is not a result the Court thinks the Sentencing Commission contemplated. For this reason the Sentencing Commission would approve a departure.

Second, proportionality requires involvement with more serious drugs to be punished more severely. Here, Defendant would receive a substantially harsher sentence from the powder cocaine than from the crack cocaine, despite crack cocaine being considered by Congress and the Sentencing Commission a more dangerous drug. [2] To result in a level 32 offense [*11] for crack cocaine, a defendant must be charged with at least 150 grams but less than 500 grams. USSG § 2D1.1(c). Defendant possessed 96.39 grams of crack cocaine (a level 30 offense). To be subject to a level 32 offense based *solely* on crack cocaine, Defendant would need to have possessed 53.61 additional grams of crack cocaine. *See id.* Since Defendant is subject here to a level 32 offense due to possessing multiple drugs, proportionality requires the second drug to have the severity of 53.61 grams of crack cocaine to warrant an increase in offense level from 30 to 32. The additional drug involved is 27.95 grams of powder cocaine.

2 *See* 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii) (where 5 kilograms of powder cocaine is punished to the same degree as 50 grams of crack cocaine, thereby punishing crack cocaine 100 times more severe than powder cocaine); USSG § 2D1.1 comment, n. 10(D)(i)(II), (E) (where 1 gram of powder cocaine is equivalent to 200 grams (.2 kilograms) of marijuana, while 1 gram of crack cocaine is equivalent to 5 - 16 kilograms of

marijuana); *United States v. Williams*, 962 F.2d 1218, 1227 (6th Cir. 1992) (recognizing Congress had good reason to punish crack cocaine more severely, [*12] because (1) crack cocaine is more potent, and thus more addictive; and, (2) crack cocaine is sold more cheaply and in smaller size, thus encouraging its use and transport); *United States v. Pickett*, 941 F.2d 411, 418 (6th Cir. 1991) (*accord*); *United States v. Avant*, 907 F.2d 623, 627 (6th Cir.1990) (*accord*).

It is anomalous to allow 27.95 grams of powder cocaine, a drug constituting a less serious offense, [3] to result in the same punishment as 53.61 grams of crack cocaine. Yet, if the Court were to blindly follow the Guidelines here, the Court would sentence Defendant at a base offense level of 32. This is not a result this Court nor the Sentencing Commission would countenance. [4]

3 *See, e.g.*, 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii).

4 Here, converting the crack cocaine alone raised Defendant's offense level. Courts should be vigilant for proportionality problems which arise even when the second drug's marijuana-equivalent is required to raise the offense level. For example, consider a defendant with 71.36 grams of crack cocaine (a level 30 offense) and 1 kilogram of marijuana. When the crack cocaine is converted, it results in 999.04 kilograms of marijuana-equivalent, still a level 30 offense. [*13] However, when the 1 kilogram of marijuana is added, the aggregate drug amount involved is 1000.04 kilograms, resulting in a base offense level of 32.

Such a sentence, however, would be giving 1 kilogram of marijuana the sentencing weight of 78.64 grams of crack cocaine. Since the crack cocaine offense level range for level 30 is at least 50 grams but less than 150 grams, a second drug that increases the offense level to 32 is being given the same punishment weight as 78.64 grams of crack cocaine (the difference between 150 grams and the 71.36 grams of crack cocaine charged).

To further illustrate this point, this hypothetical defendant, with 71.36 gram of crack cocaine and 1 kilogram of marijuana, would receive the same base offense level as a defendant with 150 grams of crack cocaine and no other drug. Furthermore, both defendants, other factors equal, should warrant the same sentence under the Guidelines because both of their offenses are at the bottom of level 32; 150 grams of crack cocaine and 1000.04 kilograms of marijuana are at the low drug ranges for crack cocaine and marijuana for level 32.

A defendant would, paradoxically, be better off under the Guidelines to have 149.99 grams [*14] of crack cocaine (a level 30 offense) than 78.64 grams of crack cocaine and 1 kilogram of marijuana (a level 32 offense).

Due to the severity of the crack-cocaine-to-marijuana conversion rates for offense levels 24, 30, 32, and 36, Courts should be extremely cautious when sentencing multi-drug defendants with crack cocaine amounts at those offense levels. *Cf. supra* note 1.

As the above analysis demonstrates, the operation of the crack cocaine conversion rate in this case results in an anomalous and disproportionate sentence. The Court must determine the appropriate Guideline for Defendant, taking into account the text, structure and underlying philosophy of the Guidelines. *See* 18 U.S.C. § 3553(a)(6).

**C. Determining the Appropriate Base Offense Level within the Guidelines**

As discussed above, increasing Defendant's offense level based solely on the conversion of the crack cocaine results in an anomalous result. The Court must therefore determine the appropriate base offense level for Defendant's sentence to avoid these anomalies. *See* 18 U.S.C. § 3553(a)(6). Defendant's base offense level for the unconverted crack cocaine is 30. *See* USSG § 2D1.1(c)(5). The Court determines this as the appropriate [*15] base offense level in this case for both the crack and powder cocaine, as follows:

Crack cocaine is punished more severely than powder cocaine. *See, e.g.*, 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii). Yet even if the Court viewed the 27.95 grams of powder cocaine as 27.95 grams of crack cocaine, Defendant's total amount of crack cocaine, 124.34 grams, would still fall within the level 30 base offense range. Thus, that offense level is sufficient to account for, without overstating, the amount of powder cocaine in Defendant's possession.

Furthermore, the powder cocaine involved results in a marijuana-equivalent of 5.59 kilograms. *See* USSG § 2D1.1 comment. (n.10(E)) (converting 1 gram of powder cocaine to 200 grams of marijuana). The Court notes the amount of marijuana-equivalent for the powder cocaine is less than one percent of the marijuana required for a base offense level of 30 (i.e. at least 700 kilograms and

not more than 1,000 kilograms), and less than one-half of one percent of the marijuana-equivalent from the crack cocaine (i.e. 1349.46 kilograms). *See* USSG § 2D1.1(c)(5); USSG § 2D1.1 comment. (n.10(D)(i)(II)). Thus, the powder cocaine is comparatively minor, and does not warrant an [*16] increase of two offense levels.

**D. Non-Guideline Sentence**

As explained above, the Court denied Defendant's motion for a non-guideline sentence, what Defendant referred to as a variance. The Court does not see a necessity to consider a non-guideline sentence because it has determined it could reach the appropriate sentence within the Guidelines by properly departing downward within the Guidelines.

However, had the Court not been able to calculate the proper guideline range for some reason, it would have used its authority under 18 U.S.C. § 3553(a) to impose the same sentence it determined after deciding a departure was appropriate. Under § 3553(a), the Court is required to impose a sentence that avoids unwarranted sentencing disparities, and assures the principle of proportionality is maintained. *See* 18 U.S.C. § 3553(a)(6); *Kimbrough v. U.S.*, 128 S. Ct. 558, 169 L. Ed. 2d 481 2007 WL 4292040, *13 (2007).

**IV. CONCLUSION**

The Guidelines are based in part upon the principle of proportionality, and this Court is charged with sentencing more serious crimes more severely. *See* 18 U.S.C. § 3553(a)(6); USSG § 1A1.1 comment. (n.3), background. As discussed above, sentencing Defendant at a base offense level of [*17] 30 provides a sufficient punishment, while avoiding disproportionate disparities with other defendants guilty of more serious drug offenses. For these reasons, the Court **GRANTED IN PART** Defendant's motion for a departure within the Guidelines, determining the appropriate base offense level as 30, pursuant to USSG § 5K2.0(a)(2)(B) (Court File No. 96). The Court **DENIED IN PART** Defendant's Motion for Variance for a non-guideline sentence (Court File No. 96).

/s/

**CURTIS L. COLLIER**

**CHIEF UNITED STATES DISTRICT JUDGE**

1 of 100 DOCUMENTS

**UNITED STATES OF AMERICA -against- TULIO MOLINA, Defendant.**

**06-CR-482 (JG)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2008 U.S. Dist. LEXIS 15284**

**February 28, 2008, Decided**
**February 28, 2008, Filed**

**NOTICE:** FOR ELECTRONIC PUBLICATION ONLY

**COUNSEL:** [*1] For Government: BENTON J. CAMPBELL, Tanisha Simon, United States Attorney, Brooklyn, New York.

For Defendant: Florian Miedel, FEDERAL DEFENDERS OF NEW YORK, INC., Brooklyn, NY.

**JUDGES:** John Gleeson, U.S.D.J.

**OPINION BY:** John Gleeson

**OPINION**

**MEMORANDUM**

JOHN GLEESON, United States District Judge:

This case illustrates an unfortunate consequence of the United States Sentencing Commission's decision to prioritize administrability over consistency in setting offense levels for crimes involving more than one controlled substance under the federal sentencing guidelines.

BACKGROUND On July 20, 2006, Tulio Molina was indicted for one count of distribution and possession of cocaine base ("crack") with intent to distribute and one count of possession of cocaine with intent to distribute. On March 2, 2007, Molina pled guilty to Count One, charging him with distributing and possessing 50 grams or more of crack with intent to distribute.

For the purposes of calculating his advisory range under the Sentencing Guidelines, Molina was held accountable for 72.1 grams of crack and 4.9 grams of cocaine. U.S.S.G. § 2D1.1(c)'s Drug Quantity Table indicates that 50 to 150 grams of crack produces a base offense level of 30. Had the 72.1 grams [*2] of crack been the only quantity of drugs Molina was accountable for, he would have had a base offense level of 30.

In mixed drug offenses, however, the Guidelines demand conversion of each quantity of drugs into the corresponding quantity of marijuana as determined by the Drug Equivalency Tables of § 2D1.1 cmt. n.10(E). These quantities are then aggregated into a total amount of "marijuana" in order to determine the base offense level. Unfortunately, the Drug Equivalency Table does not always provide actual equivalency, as illustrated in this case.

The revised crack equivalency table indicates that a quantity of crack qualifying for base offense level 30 is converted to marijuana at the proportion of 14 kilograms of marijuana per gram of crack. § 2D1.1 cmt. n.10(D)(i)(II). Thus, Molina's 72.1 grams of crack (which is at the low end of the 50-150 gram range qualifying for base offense level 30) is converted into 1009.4 kilograms of marijuana (72.1 x 14 = 1009.4). 1009.4 kilograms of marijuana, in turn, qualifies for base offense level 32. § 2D1.1(c) (prescribing base offense level of 32 for "at least 1000 KG but less than 3000 KG of marihuana"). That is, the amount of marijuana "equivalent" [*3] to 72.1 grams of crack produces a base offense level two levels higher just by virtue of its conversion to marijuana.

In one sense, Molina's 4.9 grams of cocaine are an afterthought. One gram of cocaine is equivalent to 200 grams of marijuana, so his 4.9 grams are equivalent to 980 grams of marijuana (4.9 x 200), which increases the amount of drugs for which he is accountable from 1009.4 kilograms of marijuana to 1010.38 kilograms of marijuana. In another sense, however, this relatively trifling quantity of cocaine has outlandishly disproportionate significance in calculating Molina's guidelines range. Merely by being a different drug, the cocaine triggered the use of the Drug Equivalency

Tables, under which a quantity of crack at the low end of base offense level 30 is "equivalent" to a quantity of marijuana qualifying for base offense level 32. [1]

1 Molina also received a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, and a two-level downward adjustment under U.S.S.G. § 2D1.1(b)(11)'s "safety valve" provision. His eligibility for the "safety valve" adjustment also rendered the statutory mandatory minimum of 120 months inapplicable. 18 U.S.C. § 3553(f). [*4] Accordingly, his total offense level was 27, which in light of his criminal history category of I provided an advisory range of 70 to 87 months.

DISCUSSION

The Drug Equivalency Tables produce a bizarre and unjustified outcome in this case. To grasp the absurdity of this result, it is useful to imagine that Molina had possessed, instead of the 4.9 grams of cocaine, another 4.9 grams of crack. He would have then been accountable for 77 grams of crack, comfortably within base offense level 30, not 32. Indeed, if instead of the 4.9 grams of cocaine, he had possessed *another 72.1 grams of crack*, he still would have remained at a base offense level of 30. Even after the Commission's narrowing of the crack-powder disparity in Amendment 706, crack remains treated as a significantly more serious drug than cocaine -- except here, where 4.9 grams of cocaine produce a higher sentence than would another 72.1 grams of crack.

The reason the Drug Equivalency Tables do not produce an equivalent amount of drugs is the Commission's decision to simplify the calculation of guidelines ranges in offenses involving more than one drug. It is important to understand what an actual equivalency would be. Obviously [*5] an amount of marijuana qualifying for base offense level 32 is not equivalent to an amount of crack qualifying for base offense level 30. Nor, however, would an amount of marijuana just shy of qualifying for base offense level 32 be equivalent to an amount of crack which just barely qualifies for base offense level 30. The reason is easy to see: Adding a small amount of marijuana to an amount of marijuana at base offense level 30 but just barely below the threshold for base offense level 32 will produce base offense level 32. Adding that same small amount of marijuana to an amount of crack which itself just barely qualifies for base offense level 30 should still produce base offense level 30. Therefore, a quantity of crack just above the threshold for level 30 is not equivalent to a quantity of marijuana which is just below the threshold for level 32, because the same aggravating factor (adding a small amount of extra marijuana) produces different results.

The equivalent amount of marijuana to 72.1 grams of crack must not merely qualify for the same base offense level, but must be at the same proportional point between the top and bottom of the range of quantities qualifying for that [*6] base offense level. That is, the range of quantities of crack qualifying for base offense level 30 is 50 to 150 grams. 72.1 grams of crack exceeds the bottom of that 100-gram range by 22.1% of the range; to qualify for offense level 32, a defendant would need to be responsible for additional drugs (in crack, 77.9 grams) constituting 77.9% of the range. The amount of marijuana that is truly equivalent to 72.1 grams of crack would be that quantity of marijuana which exceeds the bottom of the 300-kilogram range between the threshold for base offense level 30 (700 kilograms of marijuana) and the threshold for base offense level 32 (1000 kilograms of marijuana) by 22.1% of the range. This would be equivalent because, just as with the corresponding amount of crack, a defendant would need to be responsible for additional drugs equal to 77.9% of the range in order to qualify for base offense level 32. That is, calculating equivalency by reference to the proportion of the range for the applicable offense level is a true equivalency because equal amounts of extra drugs lead to equal results.

It is somewhat complicated to calculate equivalency in this way, because offense levels are set so that [*7] each additional gram of a drug has less weight at higher offense levels than at lower offense levels. See § 2D1.1; Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hof. L. Rev. 1, 27 (1988) (explaining Commission's approach to increasing quantities). Thus, while a straight proportionate conversion of drugs works within one offense level, it does not work between offense levels. Accordingly, calculating the true equivalency between a quantity of crack and a quantity of marijuana requires a multi-step process. First, determine the applicable base offense level for the quantity of crack. Second, determine the range of quantities within that base offense level by subtracting the bottom threshold for that base offense level from the threshold for the next base offense level. For crack at level 30, we obtain a 100-gram range (call it the "level 30 crack range") by subtracting 50 grams from 150 grams. Third, subtract the bottom threshold for that same base offense level for marijuana from the top end of that threshold to obtain the corresponding marijuana range. For marijuana at level 30, we obtain a 300-kilogram "level 30 marijuana range" [*8] by subtracting 700 kilograms (the threshold for base offense level 30 for marijuana) from 1000 kilograms (the threshold for base

offense level 32 for marijuana). Fourth, obtain the conversion factor between the level 30 crack range and the level 30 marijuana range by division. 300 kilograms divided by 100 grams equals a conversion factor of 3000 to 1; that is, within base offense level 30, one gram of crack is proportionately equal to 3000 grams of marijuana. This conversion factor can of course be calculated in advance and set forth in a table for each offense level.

With the conversion factor for the applicable offense level identified, the remaining steps involve application to the defendant. Fifth (continuing from above), determine the amount of drugs the defendant possessed above the minimum necessary to qualify for the applicable offense level (the "marginal drug quantity") by subtracting the bottom threshold for that offense level from the actual quantity of drugs possessed. Molina's 72.1 grams minus offense level 30's bottom crack threshold of 50 grams yields the marginal crack quantity of 22.1 grams. Sixth, multiply the marginal drug quantity by the conversion factor to obtain [*9] the marginal marijuana quantity. Molina's marginal crack quantity of 22.1 grams times the conversion factor of 3000 equals a marginal marijuana quantity of 66,300 grams or 66.3 kilograms. Seventh, add the marginal marijuana quantity to the bottom threshold of marijuana for that base offense level to obtain the equivalent marijuana quantity. The bottom threshold for marijuana at level 30 is 700 kilograms, which added to Molina's 66.3 kilogram marginal marijuana quantity yields an equivalent marijuana quantity of 766.3 kilograms. If this true equivalence method had been used in Molina's case, his base offense level would have been 30, [2] his adjusted offense level would have been 25, and his final guidelines range would have been 57 to 71 months, instead of 70 to 87 months.

2 Even using the current Drug Equivalency Tables, 4.9 grams of cocaine would be only 980 grams of marijuana, which added to the equivalent marijuana quantity of 766.3 kilograms produces a total of 767.28 kilograms, well below the 1000-kilogram threshold for level 32. A true equivalence between the quantity of cocaine and marijuana would require accounting for the varying weights accorded each gram of cocaine at different [*10] offense levels, and would add a further layer of complexity due to the fact that 4.9 grams of cocaine only qualifies for base offense level 12, unlike the 72.1 grams of crack which qualify for base offense level 30.

This method of calculating equivalency is somewhat more complex, as it requires the use of different conversion factor for each base offense level and the extra steps of subtracting out the bottom threshold of the non-marijuana drug range and adding back in the bottom threshold of the marijuana range. The use of a different conversion factor for each base offense level would be somewhat mitigated by the fact that the conversion factors could be set forth separately for each base offense level in a table, as is currently done for crack. [3] However, it would avoid aberrant results such as that produced in Molina's case.

3 Of course, the conversion factors set forth for crack produce false equivalencies as in Molina's case because they attempt to simplify away the need to subtract the bottom thresholds of the applicable ranges. That is, the conversion factors are artificially inflated because they are intended to be applied to the entire quantity of drugs, not merely the marginal [*11] quantity of drugs. But since the entire quantity of drugs assigns diminishing weight to each additional gram of a drug (as opposed to the quantity of drugs within any one offense level, which has proportional weight), the conversion factor will necessarily generate some situations such as Molina's, where an "equivalent" quantity of marijuana produces a strikingly different result.

CONCLUSION

Results such as that produced here are not only bizarre, they are unjust. The Guidelines continue to have great weight even after *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and its progeny. Worse, a defendant's Guidelines range being reduced is an *absolute* condition on that defendant's receipt of a sentence modification under the proposed revised § 1B1.10. A defendant responsible for 72.1 grams of crack and 4.9 grams of cocaine should be more favorably situated than a defendant responsible for 77 grams of crack. Yet the former defendant is ineligible for the sentence modification under 18 U.S.C. § 3582(c) that the latter defendant may receive. The disparity between a base offense level of 32 for a defendant responsible for 72.1 grams of crack and 4.9 grams of cocaine and a base offense level 30 [*12] for a defendant responsible for 77 grams of crack is certainly "unwarranted" within the meaning of the Sentencing Reform Act. 28 U.S.C. § 991(b)(1)(B). If the Commission retains its commitment to the under-remarked but questionable decision to calculate sentences based mainly on drug quantity, see Jon O. Newman, *The New Commission's Opportunity*, 10 Fed. Sent. R. 44 (1997) ("A better system would recognize that role in the offense is a far more significant measure of culpability than quantity"), it should consider

moving to a more fine-grained and accurate system for determining equivalent quantities, even if it requires one or two more steps to calculate. Until the Commission does so, district judges should be vigilant for false equivalencies produced by the Drug Equivalency Tables.

John Gleeson, U.S.D.J.

Dated: February 28, 2008

Brooklyn, New York

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

UNITED STATES OF AMERICA, )
)
v. ) No. 2:99-CR-119
)
TYRAN COMER )

**ORDER REGARDING MOTION FOR SENTENCE REDUCTION**
**PURSUANT TO 18 U.S.C. § 3582(C)(2)**

Upon motion of the defendant under 18 U.S.C. § 3582(c)(2) for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u), and having considered such motion, which is unopposed, **IT IS ORDERED** that the motion is **GRANTED** and the defendant's previously imposed sentence of imprisonment (as reflected in the last judgment issued) of 135 months **is reduced to time served.**

**I. COURT DETERMINATION OF GUIDELINE RANGE** (Prior to any departures)

| | |
|---|---|
| Previous Offense Level: 31 | Amended Offense Level: 29 |
| Criminal History Category: III | Criminal History Category: III |
| Previous Guideline Range: 135-168 mo. | Amended Guideline Range: 108-135 mo. |

**II. SENTENCE RELATIVE TO AMENDED GUIDELINE RANGE**

The reduced sentence is within the amended guideline range.

**III. ADDITIONAL COMMENTS**

N/A

Except as provided above, all provisions of the judgment dated March 10, 2000, shall remain in effect.

**IT IS SO ORDERED.**

**ORDER DATE: March 3, 2008**
**EFFECTIVE DATE: March 13, 2008**

/s/RUDY LOZANO, Judge
United States District Court